May it please the Court, Jonathan Ressler, appointed counsel for Petitioner. I would like to reserve three minutes for rebuttal. Petitioner put himself at risk by cooperating with the U.S. government against members of the Knights Templar cartel. The cartel members put out a hit on him. Not exactly out of the goodness of his heart, right? He got a pretty good deal. Yes, Your Honor. So it's not like he's a volunteer. He's coming forward and saying, hey, I am reporting this illegal activity. He got caught. That's exactly right. Doing illegal things, and he bought his way out of a lot of time in prison by cooperating, which is not unusual. People do that all the time. People let out their friends to get out of jail fast, right? Yes, although we would submit there are not many cat cases that we could find, at least involving those who cooperated against members of one of the powerful Mexican cartels. I understand. You have a decent cat argument, but don't make your friend out to be a hero. I mean, he's a guy who did what he had to do to avoid the just deserts of his illegal conduct. Let's just be frank about that. Yes. You're saying it's an irrelevancy one way or the other. It doesn't matter. He has a legitimate fear of torture. It doesn't matter how it came to pass, is your argument, I guess. Yes, that's right, Your Honor. Well, then why raise it if it's so irrelevant? Why start out with something weak like that? Well, the fact that he is a cooperator is what's relevant, and the reason why he cooperated doesn't diminish what the cartel would like to do. Well, you said that he helped out the United States government. You know, he came off and, you know, he started. My client helped the United States, and here, you know, come on. Yeah, I don't mean to imply that he was. Well, you did mean to imply exactly that. Go back and listen to the tape, you know, watch the tape and watch yourself step up to the lectern, and that's exactly what you did. Well, Your Honor. It's a bad move. I apologize. You knew it wasn't true. We knew it wasn't true. Well, Your Honor, the fact. Your client bought his way out of prison by ratting on his friends. Let's start with that proposition, okay? Yes, he did. Okay, go from there. And the two associates that he was involved with were members of the Knights Templar cartel. They put out a hit on him, and the only reasonable inference from this record is that Petitioner faces that there are substantial grounds for believing that Petitioner would be at risk if he is returned to Mexico. Why wouldn't internal relocation save him from that? Sorry, Your Honor. Why doesn't internal relocation, going to a different part of Mexico, save him from that? Well, there's two reasons. First, neither the BIA nor the government is relying on internal relocation in this case. The BIA expressly said that that was not any reason why it was denying relief, and the government. They didn't address the relocation issue at all. They addressed it only insofar as they said they weren't ruling on it. Right. So if we were to agree with you, it would have to be remanded for a determination as to whether relocation was feasible? We think that it would not need to be remanded. There are cases, and I would point the case at least to the Edu case involving Eritrea, where this Court was able to determine, based on the record, that there wasn't anywhere that it would be feasible to relocate the petitioner to, and we think that this record shows, at least, that the drug cartels have intelligence now. How can we make findings on something that the board and the IJ said they're not even looking at? Well, we think that this Court certainly would have the option to remand it back for just a determination on the relocation element, but we think here that the BIA expressly said that was not a reason why it was denying relief and that there's two elements to the Catt claim here. The first element is whether or not there's substantial grounds for believing the petitioner would be in danger. The second element is whether or not there's official acquiescence. We think that the only reasonable conclusion is that petitioner established both elements of his Catt claim and is therefore entitled to Catt relief. So what do you rely upon to support your argument that there would be acquiescence if he were to be returned? Yeah, and there's numerous country conditions evidence in the record here. There's the State Department country report, which reports at pages 825 and 851 of the administrative record, that local officials act directly on behalf of drug traffickers in Mexico, including the powerful cartels. We have other news stories and expert analysis on page 887 and 888 that discuss that there's widespread impunity and corruption throughout Mexico. So does that mean that you never can have a situation where a Mexican can be returned to Mexico because of this widespread local as well as national type of acquiescence that you urge? No. We think that this case, again, is limited to someone who cooperated and is a known cooperator to the cartels. And at least in those circumstances, we think that there, in Mexico, there are substantial problems. And at this present time, at least as the time that the State Department country report in the record here, there clearly was official acquiescence. Local officials are known to facilitate and participate in the kinds of activities that Petitioner is afraid of, which is being killed for cooperating against a cartel. Because he was a cooperator. Yes. And there's sufficient in this record to support the notion that there is local acquiescence for those who have cooperated and returned to Mexico. Yes. Local acquiescence everywhere in Mexico? I mean, there's no doubt that the federal government is not cooperating. There's a finding and in some instances they are trying to fight it. But is there an indication, is there evidence that everywhere in Mexico there is local cooperation with the cartel? Isn't there, in fact, evidence that the cartel is weakened, that a number of leaders have been arrested, and that they have support in some local areas but not everywhere? We have an expert analysis from Thomas Borman, which is in the record, pages 810 to 815, who says that these most powerful cartels, including the Knights Templar is one of the many names, have intelligence networks throughout Mexico and that there aren't safe places within Mexico. We think that the State Department country report supports that. That report shows that even in places like Mexico City, local police have been involved in cartel activities and people have been harmed. So there would be no safe place in any part of Mexico at all? You do not look discreetly upon a particular locale in making this assessment? In this record, at least, there's no evidence that there's anywhere, and the government hasn't pointed to anywhere in Mexico where a petitioner would be able to safely relocate. Well, I think what it really depends on is how bad they want to get him. Yeah. I mean, if they're really intent on killing this man when he comes back to Mexico, I suspect he's in very serious danger. You know, if you've offended a certain Russian ruler, you're not safe in London. If he really wants to get you, he's going to get you. So part of the analysis has to be is how seriously will they seek to get him, given what he has done? He's not just refused to join. He was with him, and then he ratted on him. Yeah. Okay. Yeah, that's exactly right, Your Honor. But I'm a little reluctant to make that decision here because the IJ and the BIA have not made it themselves. I think that's a decent argument to make to them, but they've not decided the question. That's right, Your Honor. It seems what you're saying to me is that anybody who has cooperated, who was ratted out of these people automatically would be at risk wherever that person would return to Mexico. But that determination, as Judge Fletcher just mentioned, has not been made by the BIA or the IJ. There's no determination here that would educate me, at least, as to whether he's at risk throughout all of Mexico. Don't you think that that's something that's missing from this record? I agree that it hasn't been developed on appeal, at least in this record. We think there was enough evidence below to show that there is nowhere where these Mexican cartels, when they want to seek out a cooperator, can find it. And in the other cases that we've cited in our briefs involving people who have cooperated against the Mexican cartels, and we have about a half-dozen cases that we've mentioned, the federal courts have widely recognized that corruption is widespread throughout Mexico and haven't suggested that there's any safe havens, and nor does the State Department country report suggest there's anywhere. What you're saying is anybody who cooperates in the United States cannot be returned to Mexico. We think that someone who cooperates against one of the powerful Mexican cartels, where the people learn that he cooperated against them, where they put a direct threat on him, would be in that kind of situation. And we would also point to the DEA reports in this case, which mention that with respect to this particular cartel operation, anyone who cooperated would be at risk. Well, Judge Fletcher mentioned London. What about in the United States? I mean, they really want to get you, want to get him here, too. The United States has a much safer police. The Mexican cartels aren't killing cooperators. If there was a State Department country report for the United States, it would not look like the one that's in Mexico. We submit that Fisher's been safe here, and he would be safe here, and that's not the case in Mexico. I'm happy to be in Seattle because I escaped from Brooklyn, where we recently had El Chapo come to my court. So, you know, he's there in Brooklyn right now. You can stay the weekend. A couple of weeks ago. And obviously the fact that he was able to escape and that he, you know, for 20 years was out of control in Mexico, I think is a different situation than here. I'd reserve any remaining time. We're looking to acquire the Eastern District for the Ninth Circuit. We're looking to acquire the Eastern District. Well, that's why I'm here. Yeah, exactly. I'm trying to make a, you know, a shtick here. I like that. I would reserve any remaining time I have left for rebuttal. Well, it's negative minutes, but we'll see how things go. Thank you, Your Honor. I almost had that case. Yeah. May it please the Court, Matthew George for the Attorney General. You didn't have enough the last time? I didn't, Your Honor. Judge Fletcher, going to your question about how likely the cartel is to get him or how interested they are in Petitioner. It's really a question of how bad do they want him. Yeah, sure. To me, that's exactly what the agency addressed here regarding the likelihood of torture and the number of factors that the agency went through regarding whether or not he was going to be tortured and pointing to things such as the supposed kingpins in the United States are serving long sentences. His family has never been contacted or harmed. No one's approached them. No one's threatened him. The two co-defendants who are actually back in Mexico have made no efforts to contact any family, anyone. There's just been complete silence since the sentencing regarding any threats. When this was going on in the district court, when the criminal proceedings were going on, there were some threats made from Giovanni and Domingo, the two kingpins, and all of that seems to have completely stopped after the sentencing. Well, there's an Italian, maybe Sicilian saying, revenge is a dish best eaten cold. That's certainly one conclusion that could be drawn from this record. The agency did not draw that conclusion. It made a different finding. And this case really boils down to the cartel's awareness of Petitioner and what Petitioner did, and that really goes to how interested they are in him. Well, they're aware of what's happening in court today. Presumably they can find out what this is all about, right? In theory. Does that increase the risk that he would have now that he's argued this case before the court and it's a public record? This is being live streamed. I can't answer that. You could watch it on the Internet from Michoacan. Oh, where's the evidence in this record that anyone's going to do that? I know that maybe that seems ridiculous, but that's really the point in this case. Petitioner wants to point to general evidence of the harm that cartels exact on cooperators and ignore the specific evidence in this case. The cartel has already made threats against him while he's in detention here, going to the point that came up earlier of the reach of this cartel might be in the United States. In fact, it is. He was working for this cartel in the United States. He was threatened in the United States. When do you think a person who does cooperate, like this person cooperated, we know he's a bad person. Certainly there were threats against him. The government took caution to protect him, I guess, on a number of occasions. They relocated him within the prison system. So it was serious stuff. When do you think a situation of that would justify not returning somebody to Mexico, if not this case? That I can't answer. That would be up to the agency. But it would require more facts than what we have here. What else? Threats, more threats, ongoing threats. There are not enough threats here, in other words. Yes. Are we supposed to just assume in the abstract, in general, sort of going to your honors? It doesn't seem like an abstraction to me. This guy was really threatened. There were notices. There were letters. They relocated him. I mean, you have, to me, a rich history here of this person seriously being threatened. I don't think he's faking it, do you? No. And the agency didn't think he was faking it. But they stopped. The threats stopped. They stopped in 2014. It's now 2017. And if he was threatened yesterday, you would take a different position? Perhaps, if that were the facts. And also, the point is these threats came from individuals in the United States. They didn't come from anyone in Mexico. Petitioner asserts a fear of harm, of torture in Mexico. But where's the evidence in this record that anyone in Mexico has any idea who he is? This is about awareness, about connecting what he did in the United States to someone in Mexico who is aware of him, who seeks to harm him, who will act on that, and that harm will rise to the level of torture. That's the standard we have to engage in in order to come to a decision in your favor? We have to show that type of evidence as a matter of law? That's what's required? I'm not so sure. What case law do you have that supports that? I'm not aware of that. A matter of JFF is specifically where the Attorney General has said that this chain of speculative events is insufficient. The petitioner must prove every link in that chain more likely than not. He can't simply point to, well, I'm a cooperator, cartels in Mexico harm cooperators, therefore I've met my burden of showing it more likely than not that I will be tortured in Mexico. But there's evidence here. There's all sorts of reports about the likelihood of that possibly happening, aren't there? Generically, yes. But a CAT claim requires particularized or individualized evidence. But your only argument is that the threats have stopped, not that they weren't made. I mean, this is not I'm a cooperator, therefore, as you stated it. No, I'm a cooperator. I was threatened. And your argument is that the threats haven't been made recently. That's your argument. That's what the board pointed to. I thought you were making two arguments. The threats stopped and they were in the United States. Yes. There were no documented threats from Mexico. That's correct. That's the whole argument. In terms of the Mexican things, there's no connection, there's no evidence in this record showing an individualized, particularized awareness and threat from Mexico. And that's what you say the law requires? And that case supports the proposition that there must be a particularized threat from Mexico? Yes, Your Honor. I'm not aware of that case, but maybe you're right. There's a number of cases from this court saying that the likelihood of torture must be individualized, and a petitioner cannot point to generic evidence. I think you need to go quite as far. I know there's a tendency to want to say yes to judges, but you don't have to say yes every time a judge asks you a question. The point is not that this is required. The question is whether this was a permissible basis on which the BIA could make a decision. Certainly the BIA could have gone the other way. It could say there are threats in the United States. We infer from that that they come from Mexico, and that would have been fine too, right? Yes, Your Honor. There's no requirement as such that they, but what I think your argument is that this does not compel that finding by the BIA. Yes, Your Honor. That's right. Looking at everything together, it doesn't compel. Looking at this evidence, it would have been a permissible inference to draw that he will be harmed. That certainly could have been something the agency decided here, but it didn't. It looked at the specific evidence in this case, the fact that co-defendants, the kingpins are still imprisoned. The fact that the co-defendants who are in Mexico have done nothing, made no contact. None of his family anywhere has been contacted, threatened, harmed, et cetera, and drew the inference that he has not met his burden of showing it more likely than not that he will be tortured in Mexico. And so the broader connection that I'm drawing is the evidence in this case is generic in Mexico. It is simply that cartels harm cooperators, and that's really what the board is drawing out by looking at these particular facts. The cartels harm cooperators, and simply because he's a cooperator does not mean that he's met his burden of showing it more likely than not that he'll be tortured. And looking at these specific facts, that doesn't compel the conclusion that he will be tortured more likely than not in Mexico. Thank you. Thank you. You're out of time. How about if you take a minute for rebuttal? So you're being put to the challenge now. Where in the record can you point to Judge Block that more likely than not that he will be tortured if returned to Mexico? Well, we think first there is the finding by the BIA that his co-defendants were Knights Templar cartel members. There's the evidence that the DEA said— I'm sorry. This is the co-defendants in the United States? Yes. Okay. There's the findings that the DEA made that these co-defendants had direct ties to Mexican drug traffickers, that they shipped money back and forth and were in constant communication with them. There's petitioner's testimony that there was a— A branch office, almost. Yes. These were the two members who had been sent up, and there's evidence that they were— The BIA has said just general inferences that cartels hurt or harm cooperators is not enough. Are there any specific threats coming from Mexico? There were threats from the two cartel members. Petitioner hasn't been in Mexico since he was 10 years old, so he himself has not been threatened in Mexico. But there's lots of ways in which you can have threats from Mexico. There could be threats against the family in Mexico. There could be messages from people from Mexico. There's lots of ways threats can be documented to come from Mexico. Right. But petitioner here doesn't have close connections with any family in Mexico. The only aunt and cousin he has— I realize you have reasons, but once again, what's the answer to my question? Are there any threats that are documented to come from Mexico? The only threats that have been documented that came from there were petitioner's testimony that when another co-defendant was suspected of cooperating against them, wrongly suspected, those threats had been transmitted to Michoacan, and then that co-defendant's family sent a message back saying, you better not cooperate because the cartel will end up killing you and harming us, and he made clear that he wasn't. But these co-defendants were really an extension of the main group that was down in Mexico. Am I reading the record correctly? Yes, and that's what the BIA found when it said that they were Knights Templar cartel members. That's what the DEA's reports— The same organization? Yes, and the fact that they were from Michoacan. And the DEA's reports make very clear that all of the money was going back in the proceeds and were going back to Mexico, and the drugs were there. So these were not American—these were Mexican cartel members who came to the United States, and we think that the only reasonable conclusion when Mexican cartel members put out a hit on you is that the cartel itself, in the code of conduct of the cartel, says that they will take action against cooperators, and we think that there's substantial grounds to believe that petitioner is at risk of being harmed. And we're asking the court to do what courts have done in the five or six other— Well, substantial evidence is not enough. It has to be compelling. It has to be—it has to be no room for any other conclusion. Yes, Your Honor. We think that a reasonable fact finder would be compelled to find that substantial grounds exist for finding that petitioner is in danger of being tortured in that country, just as courts have done in other cases involving cooperators against these very dangerous Mexican cartels. Thank you, Your Honor. Okay. The case is now in the stands for a minute.
judges: Kozinski, W. Fletcher, Block